## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANDRA CAMPBELL, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>   v.<br><br>PH-D FEMININE HEALTH LLC,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chandra Campbell ("Plaintiff"), by and through her attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief—except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge—against Defendant pH-D Feminine Health LLC ("pH-D Feminine Health" or "Defendant").

## <u>NATURE OF THE ACTION</u>

1.     This is a class action lawsuit on behalf of purchasers of Defendant's "Boric Acid Instant Vaginal Odor Rinse" ("Vaginal Rinse" or "Product") in the United States.

2.     Defendant manufactures and sells a variety of products for the vulva and vagina. Products include vulvar washes, wipes, sprays, and deodorants; vaginal suppositories and rinses; and, oral probiotics. Defendant sells these Products throughout the United States, including New York.

3.     Defendant holds itself out as an advocate for women's health: "At pH-D Feminine Health we are reinventing holistic feminine hygiene and wellness solutions that help millions of women feel confident and comfortable."[1]

---

[1] *Our Story*, PH-D FEMININE HEALTH, https://www.phdfemininehealth.com/pages/our-story (last visited March 14, 2023).

4.      One of Defendant's products is the "Boric Acid Instant Vaginal Odor Rinse," which is meant to "[i]nstantly elimate[] vaginal odor" "caused by menstruation, intercourse, exercise and menopause."[2]  The Product is a plastic container with a nozzle, which holds a boric acid rinse solution intended for the vagina.

5.      On the Product's label, Defendant represents that the Product is suitable for vaginal use: the label describes the Products as an "instant vaginal odor rinse" for "feminine health."  Thus, reasonable consumers reviewing the Product's label would believe the Product is suitable for vaginal cleansing.

6.      However, Defendant's representation that women should use this Product in their vagina is false: the medical community is adamant that women should ***not*** wash or cleanse the vagina with water or other fluids because it is harmful to women's health.  Accordingly, the claim that these Products are suitable for vaginal use is false and misleading because the Product is not safe for vaginal use, and consumers would not have purchased the Products, or paid substantially less for them, had they known the claim was not true.

7.      Plaintiff is a purchaser of the Product who asserts claims on behalf of herself and similarly situated purchasers of the Product for (i) violation of New York General Business Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of express warranty, (iv) unjust enrichment, and (v) fraud.

**PARTIES**

8.      Plaintiff Chandra Campbell is a resident of New York, New York who has an intent to remain there, and is therefore a citizen of New York.  In May 2022, Plaintiff Campbell purchased pH-D Feminine Health Boric Acid Instant Vaginal Odor Rinse from her local CVS.

---

[2] *Vaginal Boric Acid Rinse*, PH-D FEMININE HEALTH, https://www.phdfemininehealth.com/ collections/boric-acid-instant-vaginal-odor-rinse/products/instant-vaginal-odor-rinse (last visited March 14, 2023).

Prior to her purchase of the Product, Plaintiff Campbell reviewed the Product's labeling and packaging and saw that the Product was labeled and marketed as suitable for her vagina as a "vaginal [] rinse." Plaintiff used the Product as directed and experienced irritation as a result of her use of the Product. As a result, Plaintiff went to the gynecologist and the gynecologist advised Plaintiff to immediately stop using the product. In purchasing the Product, Plaintiff Campbell relied on Defendant's representations—as described in detail below—that the Product was suitable for vaginal use. Plaintiff Campbell saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Product was suitable for vaginal use. Plaintiff Campbell understood these representations to mean that the Product was suitable for use as a vaginal rinse and that the Product was not harmful to her sexual anatomy. Plaintiff Campbell relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true. In making her purchase, Plaintiff Campbell paid a substantial price premium due to the false and misleading claim that the product is suitable as a vaginal rinse. Had Defendant not misrepresented that the Product was suitable as a vaginal rinse, or otherwise not misrepresented that the Product had utility beyond the natural ability of a vagina to clean itself, Plaintiff Campbell would not have purchased the Product or would have paid substantially less for the Product than she did. Plaintiff Campbell did not receive the benefit of her bargain because the Product was not, in fact, suitable for use as a vaginal rinse, nor was it necessary or useful.

9.      Likewise, when Plaintiff Campbell reviewed the Product's packaging, there were no representations or warranties that the Product was unsafe for use as a vaginal rinse, or that vaginal rinses are entirely unnecessary due to the vagina's ability to clean itself. Yet, as alleged

throughout this Complaint, vaginal rinses such as the Product are unsafe for vaginal use. Accordingly, Defendant's omissions were part of the basis of the bargain in that Plaintiff Campbell would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for vaginal use and therefore unsuitable as a vaginal rinse, and had she known the Product had no utility. Plaintiff Campbell did not receive the benefit of her bargain because the Product was not, in fact, suitable for vaginal use, nor was it a necessary or useful Product. Further, Defendant's omission would have been material to Plaintiff Campbell because it concerns the Product's safety and central function.

10.     Defendant pH-D Feminine Health LLC is a limited liability company incorporated under the laws of the state of Tennessee, with its principal place of business in Madison, Tennessee. Defendant markets, sells, and distributes the Products throughout the United States, including in the State of New York. Defendant manufactured, marketed, and sold the Products during the class period.

<u>**JURISDICTION AND VENUE**</u>

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

12.     Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its principal place of business [Tennessee] and the State under whose laws it is organized [Tennessee]." *See* 28 U.S.C. § 1332(d)(10).

13.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff Campbell purchased her Product in this District.

## FACTUAL ALLEGATIONS

### I.      THE FEMALE ANATOMY

15.     A woman's sexual anatomy is a delicate and complex system in the body.  It produces important hormones, regulates the menstrual cycle, brings life into the world, and makes sexual pleasure possible.  Health organizations and professionals agree that it is important for women to take steps to protect the reproductive system from infections, diseases, and injuries in order to prevent long-term health problems.  Many conditions and disorders affect women's reproductive systems: issues range from having a slight impact—such as inflammation—to causing life-altering circumstances—such as severe pain, infertility, kidney failure, or even death.

16.     The female anatomy is composed of external and internal structures.  The entire external structure is called the vulva, and it includes the labia, clitoris, and vaginal opening.  The outer and inner labia, which translates to "lips," are folds of skin around the vaginal opening, and the labia serves to protect the rest of the sexual anatomy.  The vaginal opening, as the name suggests, leads to the vagina.  The vagina is the beginning of the internal sex organs, and leads to the rest of the reproductive organs—the cervix, uterus, fallopian tubes, and ovaries.  These internal organs control the release of hormones, the menstrual cycle, and a woman's ability to have a baby.

17.    A representation of the external structure:[3]



18.    A representation of the internal structure:[4]



---

[3] *What are the parts of the female sexual anatomy?*, PLANNED PARENTHOOD (last visited March 14, 2023), https://www.plannedparenthood.org/learn/health-and-wellness/sexual-and-reproductive-anatomy/what-are-parts-female-sexual-anatomy.

[4] *Id.*

19.    Female anatomy has evolved to be self-cleaning.[5]  As a delicate environment, the vagina is constantly working to stay lubricated, maintain its pH balance, and keep good versus bad bacteria in check.[6]  The organs self-clean through discharge, a natural shedding of fluid from the uterus, cervix, and vagina, which changes in consistency and color throughout the menstrual cycle.[7]  The vagina also has a natural microbiome (*i.e.*, a community of healthy bacteria) that helps regulate the vaginal pH and wards off health problems, such as human papillomavirus infections, bacterial vaginosis, or HIV.[8]

20.    The vagina is a mucous membrane and thus is capable of secreting and absorbing fluids at a higher rate than regular skin.[9]  Researchers have even explored the possibility of delivering drugs vaginally because of the organ's ability to rapidly absorb chemicals without metabolizing them.[10]  However, although rapid absorption may be helpful when administering medication, it poses serious issues when a woman's vagina is exposed to harmful substances.

21.    The medical community firmly recommends that women allow their vaginas to self-clean, as biologically intended.  For example, the U.S. Department of Health & Human Services' Office on Women's Health advises that "[i]t is best to let [the] vagina clean itself.  The vagina cleans itself naturally by making mucous.  The mucous washes away blood, semen, and

---

[5] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[6] Korin Miller, *Ob/Gyns Explain That Stuff in Your Underwear at the End of the Day*, SELF (Jan. 28, 2018), https://www.self.com/story/ob-gyns-decode-discharge.

[7] *Id.*

[8] *Bad Bugs: The Vaginal Microbiome and Cancer*, THE UNIVERSITY OF ARIZONA HEALTH SCIENCES (Oct. 25, 2019), https://healthsciences.arizona.edu/tomorrow/bad-bugs-vaginal-microbiome-and-cancer; Stephanie Watson, *Everything You Need to Know About Maintaining Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

[9] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[10] *Id.*

vaginal discharge."[11]  The American College of Obstetricians and Gynecologists recommends that women "do not need to douche to wash away blood, semen, or vaginal discharge.  It's better to let [the] vagina clean itself naturally."[12]  Dr. Streicher, an associate professor of clinical obstetrics and gynecology at Northwestern University Feinberg School of Medicine, says, "never wash [the] vagina under any circumstances … [t]hat should never be done."[13]

22.     However, some women "wash[] or clean[] out the inside of the vagina with water or other mixtures of fluids," also known as "douching."[14]  Gynecologists, health agencies, medical schools, and medical associations all advise women to **never** douche.  Not only is any form of washing unnecessary to maintain a clean and healthy vagina, but introducing **any** cleansing fluids to such a delicate system is hazardous.  The American College of Obstetricians and Gynecologists explains that douching "can change the normal balance of the vagina."[15]  The Cleveland Clinic echoes this warning: "When [a woman] tr[ies] to cleanse [the vagina] by using a douche, [she] actually flush[es] out the normal, healthy microbes as well as temporarily change the pH. … Rather than providing protection, douching sets up an environment that makes it easier for infections to develop."[16]

---

[11] *Id.*

[12] *Is It Safe To Douche During Pregnancy*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS (March 2022), https://www.acog.org/womens-health/experts-and-stories/ask-acog/is-it-safe-to-douche-during-pregnancy.

[13] Zahra Barnes, *Seriously, What's the Best Way to Clean My Vagina?*, SELF (March 3, 2018) https://www.self.com/story/best-way-to-clean-vagina.

[14] Office on Women's Health, *Douching*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, https://www.womenshealth.gov/a-z-topics/douching (last visited March 14, 2023).

[15] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited March 14, 2023).

[16] *Feminine Odor Problems? What Every Woman Needs to Know*, CLEVELAND CLINIC (June 10, 2021), https://health.clevelandclinic.org/feminine-odor-problems-what-you-should-know-about-douching/.

23.     Douching can lead to an array of health issues.[17]  For instance, women who douche on a weekly basis are five times more likely to develop bacterial vaginosis than women who do not douche.[18]  Women who douche also have a higher risk of getting pelvic inflammatory disease because douching causes harmful changes in the healthy bacteria that live in the vagina.[19]  Douching can also cause pregnancy problems, such as ectopic pregnancy, and infertility.[20]  One study found "a significant association" between douching and a higher concentration of 1,4-dichlorobenzene—a volatile organic compound that poses a threat to the nervous system, liver, and kidneys—in the blood.[21]  Another study found that women who douche are more likely to have exposure to diethyl phthalates—which are suspected endocrine disruptors that can alter hormone regulation.[22]  Last, douching can make women more susceptible to sexually transmitted infections.[23]

---

[17] Lisa Rapaport, *A Disturbing New Study About The Dangers Of Vaginal Douching*, HUFFPOST (July 15, 2016), https://www.huffpost.com/entry/vaginal-douche-phthalate_n_7798000.

[18] Jenifer E. Allworth & Jeffrey F. Peipert, *Prevalence of Bacterial Vaginonsis: 2001-2004 National Health and Nutrition Examination Survey Data*, 109 OBSTETRICS & GYNECOLOGY 114 (Jan. 2007), https://pubmed.ncbi.nlm.nih.gov/17197596/; P Wølner-Hanssen et al, *Association Between Vaginal Douching and Acute Pelvic Inflammatory Disease*, 263 JAMA 1936 (April 1990), https://pubmed.ncbi.nlm.nih.gov/2313870/.

[19] *Pelvic Inflammatory Disease*, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/std/pid/the-facts/pid_bro_508.pdf (last visited March 14, 2023).

[20] F. Carol Bruce et al, *Is Vaginal Douching Associated with Preterm Delivery?*, 13(3) EPIDEMIOLOGY 328 (May 2002), https://www.jstor.org/stable/3703404.

[21] Maria Cohut, *Douching Linked to Dangerous Chemicals in Blood*, MEDICALNEWSTODAY (Oct. 21, 2019), https://www.medicalnewstoday.com/articles/326746#Could-douches-contain-toxic-elements?.

[22] Lisa Rapaport, *A Disturbing New Study About The Dangers Of Vaginal Douching*, HUFFPOST (July 15, 2016), https://www.huffpost.com/entry/vaginal-douche-phthalate_n_7798000.

[23] Charlene Laino, *Douching Increases STD Risk*, WEBMD (Oct. 27, 2008) https://www.webmd.com/sex/news/20081027/douching-increases-std-risk.

## II.   THE FEMININE DOUCHE PRODUCT MARKET

24.     Despite experts' advice to never wash the vagina because it can lead to serious health issues, companies such as Defendant have developed and heavily marketed "feminine douches."  In the United States alone, women spent $33 million in 2021 on feminine douches.[24]

25.     Medical professionals and researchers note that women feel a social pressure to obtain an "unrealistic standard of what a … vagina should smell like, look like, [and] feel like," which fuels the feminine hygiene product market.[25]  Lisa Mihaly, a family nurse practitioner at the Women's Community Clinic in San Francisco explains: "Most women who douche have been led to believe that there is something wrong with them.  They think of douching almost as a medication that they can take at home to 'restore' their vagina.  Douching can seem like a quick fix to something that is not even a physical problem.  The problem is really that women are made to feel this way about their bodies."[26]  Dr. Fatima Yilmaz, an OB/GYN in New York, also notes: "People with … vaginas are spending their money chasing after an ideal that's not rooted in reality or being made to think that their normal, healthy bodily functions are somehow pathologic and need to be addressed."[27]

26.     This "hygiene" practice is a remnant of the historical stigma that women's bodies are unclean.  Some communities around the world still believe that menstruation can spread

---

[24] Matej Mikulic, *OTC Revenue of Feminine Hygiene Douches in the U.S. 2011-2021*, STATISTA (May 6, 2022), https://www.statista.com/statistics/506560/otc-revenue-of-feminine-hygiene-douches-in-the-us/.

[25] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/ (quoting Dr. Fatima Daoud Yilmaz).

[26] Julie Morse, *Why Douching Won't Die*, THE ATLANTIC (April 21, 2015), https://www.theatlantic.com/health/archive/2015/04/why-douching-wont-die/390198/.

[27] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/.

impurity, and thus menstruating women are prohibited from attending religious ceremonies, visiting religious spaces, handling food, sleeping in their home, washing their own bodies, and eating certain foods.[28]  Within the United States, experts note that attitudes towards women's bodies and cleanliness have a more complex history tied to racism.[29]  To justify the slave trade, for example, Europeans theorized there is a hierarchy of race based on "phenotypic difference," which included smell.[30]  Historians believe this olfactory discrimination has since shaped ideas of cleanliness in Black communities and sparked hygiene routines in hope of racial assimilation.[31]

27.    Research shows that feminine douches are disproportionately used by Black and Latina women in the United States.[32]  As a result, Black and Latina women are disproportionately impacted by the health risks that feminine douches pose.

28.    To summarize, the feminine douche product market preys on the notion that women need a product to make their vaginas "clean" or smell a certain way.  But, as medical experts have explained, not only are such products unnecessary due to the vagina's self-cleaning anatomy, the products increase the chances of infection, disease, and pregnancy complications.

---

[28] *Menstruation and Human Rights – Fequently Asked Questions: Menstruation?  How do they affect the status of women?*, UNITED NATIONS POPULATION FUND (May 2022), https://www.unfpa.org/menstruationfaq.

[29] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/.

[30] *Id.*

[31] *Id.*

[32] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/; Julie Morse, *Why Douching Won't Die*, THE ATLANTIC (April 21, 2015), https://www.theatlantic.com/health/archive/2015/04/why-douching-wont-die/390198/.

### III.    PH-D FEMININE HEALTH

29.    Defendant manufactures, markets, advertises, labels, and sells the pH-D Feminine Health Boric Acid Instant Vaginal Odor Rinse.  The Product is a plastic cylinder that contains a solution composed of purified water and boric acid, with a detached nozzle.  Consumers are instructed to uncap the container with the solution, twist the nozzle onto the container, and insert the nozzle three inches into the vagina then squeeze the bottle until most of the liquid is dispensed into the vagina.[33]

30.    Defendant represents that the Product is a "vaginal odor rinse" suitable for vaginal use "to cleanse vaginal secretions," "to cleanse and eliminate vaginal odors," and "to support vaginal care."  Defendant includes these representations on the labeling of the Product:



---

[33] https://www.phdfemininehealth.com/collections/boric-acid-instant-vaginal-odor-rinse/products/instant-vaginal-odor-rinse

31.     Defendant's website further represents that the Product is suitable for vaginal use:

# DAY OR NIGHT

## INSERT THE RINSE BOTTLE NOZZLE <u>INTO THE VAGINA</u> AND DISPENSE THE BORIC ACID RINSE SOLUTION.

Instantly eliminates vaginal odor.

### Boric Acid Instant Vaginal Odor Rinse

pH-D Feminine Health's Instant Vaginal Odor Rinse is THE holistic solution to obtain instant freshness.  This immediate solution effectively <u>supports vaginal care</u> by cleansing and eliminating vaginal odors and secretions.

32.     However, the medical community is adamant that a woman's sexual anatomy is a delicate system and women should ***never*** clean the inside of the vagina.[34]  Gynecologists warn that douching poses serious hazards to women's health and, thus, advise that women allow their vaginas to self-clean.  Therefore, medical experts advise that the Product is not suitable for vaginal use.

33.     Despite Defendant's claim that the Vaginal Rinse "support[s] vaginal care," Defendant admits "[t]he vagina is self-cleaning" on its website.[35]  Indeed, Defendant explains

---

[34] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited March 14, 2023); *Feminine Odor Problems? What Every Woman Needs to Know*, CLEVELAND CLINIC (June 10, 2021), https://health.clevelandclinic.org/feminine-odor-problems-what-you-should-know-about-douching/.

[35] *5 Common Vaginal Myths*, PH-D FEMININE HEALTH (Dec. 21, 2022), https://www.phdfemininehealth.com/blogs/articles/vaginal-myths?_pos=1&_sid=4efbb610b&_ss=r.

"[w]hen you wash internally with anything other than water, you disrupt [the] normal [vaginal] flora, potentially paving the way for more harmful bacteria, infection, or irritation."[36]  In a blog post specifically aimed at young women preparing for college, Defendant explains "How to maintain vaginal health": "First, some of the don'ts.  Douching [and] washing the inside of the vagina … are all no-gos from Dr. Cross."[37]

34.    Defendant also explains that douching often *causes* yeast infections: "[yeast infections] can also be triggered by douches … [which] disrupt the natural order of things, vagina-wise."[38]  Thus, the Vaginal Rinse, which is intended to wash the inside of the vagina, does not "support vaginal care" and actually puts women's health at risk.

35.    As Defendant's name, pH-D Feminine Health, implies, a healthy vaginal pH level is important because it serves to protect a woman's sexual anatomy.  pH is a measurement of how acidic or basic a substance is.  pH is measured on a scale from 0 to 14—a pH less than 7 is acidic while a pH over 7 is basic.  Generally, a healthy vagina has a pH level between 3.8 and 4.5, meaning it is moderately acidic.

36.    On Defendant's website, Defendant represents that "each bottle of Instant Vaginal Odor Rinse contains the appropriate acidity for vaginal care."[39]  However, gynecologists urge

---

[36] *Id.*

[37] *How to Prep for College, According to Our Feminine Health Advisors*, PH-D FEMININE HEALTH (Aug. 31, 2022), https://www.phdfemininehealth.com/blogs/articles/how-to-prep-for-college-according-to-our-feminine-health-advisors?_pos=3&_sid=63781ea15&_ss=r.

[38] *The Telltale Itch: Bacterial Vaginosis vs Yeast Infections*, PH-D FEMININE HEALTH (Nov. 18, 2022), https://www.phdfemininehealth.com/blogs/articles/bacterial-vaginosis-vs-yeast-infection?_pos=2&_sid=63781ea15&_ss=r.

[39] *Vaginal Boric Acid Rinse*, PH-D FEMININE HEALTH, https://www.phdfemininehealth.com/collections/boric-acid-instant-vaginal-odor-rinse/products/instant-vaginal-odor-rinse (last visited March 14, 2023).

women not to douche because it can alter the pH balance.[40]  If the vaginal pH level is thrown off,

a woman becomes more susceptible to bacterial vaginosis, yeast infections, human

papillomavirus, herpes simplex virus, HIV, and trichomoniasis.[41]

37.     To summarize, Defendant markets its Product as a "vaginal odor rinse" suitable

for vaginal use "to cleanse vaginal secretions," "to cleanse and eliminate vaginal odors," and "to

support vaginal care."  However, these representations are false and misleading.  Gynecologists

have stated that feminine douches like Defendant's are not only unsafe because they can cause

infections and make women more susceptible to disease, but the Products are also unnecessary

because the vagina is self-cleaning.  At best, therefore, Plaintiff and other Class Members would

not have paid as much for the Products but for Defendant's misrepresentations regarding the

Product's suitability as a vaginal rinse, and but for Defendant's omissions that the Product is not

suitable as a vaginal rinse.  At worst, Plaintiff and other Class Members would not have

purchased the Product at all but for Defendant's misrepresentations and omissions because the

Product is not only dangerous, it is unnecessary and therefore worthless.  In either case, Plaintiff

and other Class Members did not receive the benefit of their bargain with Defendant.

## CLASS ALLEGATIONS

38.     Plaintiff seeks to represent a class defined as all persons in the United States who

purchased the Product during the applicable statute of limitations period (the "Class").  Excluded

from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries,

employees, officers, directors, and co-conspirators, and anyone who purchased the Products for

---

[40] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited March 14, 2023).

[41] Stephanie Watson, *Everything You Need to Know About Maintaining Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

39.    Plaintiff Campbell also seeks to represent a subclass consisting of Class members who purchased the Products in New York during the applicable statute of limitations period (the "New York Subclass").

40.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

41.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass.  Although the precise number of members in the Class and Subclass is unknown to Plaintiff, the true number of members of the Class and Subclass is known by Defendant and may be determined through discovery.  Members of the Class and Subclass may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

42.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

> (a)    whether Defendant's labeling, marketing, and promotion of the Products was false and misleading;
>
> (b)    whether Defendant's conduct was unfair and/or deceptive; and
>
> (c)    whether Plaintiff and the Class and Subclass have sustained damages with

respect to the common-law claims asserted, and if so, the proper measure of their damages.

43.     With respect to the Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated GBL §§ 349 and 350.

44.     **Typicality**.  The claims of the named Plaintiff are typical of the claims of other members of the Class and Subclass in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

45.     **Adequacy of Representation.**  Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the members of the Class and Subclass she seeks to represent, she has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

46.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Class and Subclass are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Class and Subclass could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court

system from the issues raised by this action.  By contrast, the class action device provides the

benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no unusual management difficulties

under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York GBL § 349
### (On Behalf Of The New York Subclass)

47.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

48.     Plaintiff brings this claim individually and on behalf of the proposed New York

Subclass against Defendant.

49.     New York's General Business Law § 349 prohibits deceptive acts or practices in

the conduct of any business, trade, or commerce.

50.     In its provision of services throughout the State of New York, Defendant conducts

business and trade within the meaning and intendment of New York's General Business Law

§ 349.

51.     By the acts and conduct alleged herein, Defendant has engaged in deceptive,

unfair, and misleading acts and practices, which include, without limitation, (i) misrepresenting

that the Product is a "vaginal odor rinse" suitable for vaginal use "to cleanse vaginal secretions,"

"to cleanse and eliminate vaginal odors," and "to support vaginal care" and (ii) failing to disclose

that the Product is not in fact safe or suitable for vaginal use.

52.     The foregoing deceptive acts and practices were directed at consumers.

53.     The foregoing deceptive acts and practices are misleading in a material way

because they fundamentally misrepresent the suitability of the Product for vaginal use, as well as

the fact that Product bestow no benefit at all, in order to induce consumers to purchase the Products.

54. Plaintiff and members of the New York Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product was suitable for vaginal use, and had Defendant not failed to disclose that the Product was not suitable for vaginal use.

55. Further, Plaintiff and members of the New York Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product had utility beyond the normal cleaning function of a vagina, and had Defendant not failed to disclose the Product was useless because the vagina is self-cleaning.

56. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

57. On behalf of herself and other members of the New York Subclass , Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York GBL § 350
### (On Behalf Of The New York Subclass)

58. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59. Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

60.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

61.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

62.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

63.    Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are directed to consumers.

64.    Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

65.    Defendant's false, misleading, and deceptive statements representations of fact, and omissions have resulted in consumer injury or harm to the public interest.

66.    Defendant possessed superior knowledge that the Product was not suitable for vaginal use.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Product, and had in fact advised that Defendant's Product was unsafe.  Indeed, Defendant notes on its own website "[w]hen you wash internally with anything other than water, you disrupt [the] normal [vaginal] flora, potentially paving the way for more harmful bacteria, infection, or irritation."[42]

---

[42] *5 Common Vaginal Myths*, PH-D FEMININE HEALTH (Dec. 21, 2022), https://www.phdfemininehealth.com/blogs/articles/vaginal-myths?_pos=1&_sid=4efbb610b&_ss=r.

67. As a result of Defendant's misrepresentations and omissions, Plaintiff and members of the New York Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product was suitable for vaginal use, and had Defendant not failed to disclose that the Product was not suitable for vaginal use.

68. Further, as a result of Defendant's misrepresentations and omissions, Plaintiff and members of the New York Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product had utility beyond the normal cleaning function of a vagina, and had Defendant not failed to disclose that the Product was useless because the vagina is self-cleaning.

69. On behalf of herself and other members of the Class and Subclass, Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**<u>COUNT III</u>**
**Breach Of Express Warranty**
**(On Behalf Of The Class And The New York Subclass)**

70. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

72. This claim is brought under the laws of New York.

73. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Product was suitable for vaginal use.

74.     In fact, the Product is not suitable for vaginal use.  Doctors advise women to never wash the inside of the vagina because it can alter the natural pH levels of the vagina. Moreover, doing so can cause infection, disease, or other serious health issues.

75.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class and New York Subclass members have been injured and harmed because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was unsuitable for vaginal use.

76.     On February 21, 2023, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313, 2-314, and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**<u>COUNT IV</u>**
**Unjust Enrichment**
**(On Behalf Of The Class And The New York Subclass)**

77.     Plaintiff incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

78.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

79.     This claim is brought under the laws of the State of New York.

80.     Plaintiff and Class and New York Subclass members conferred benefits on Defendant by purchasing the Product.

81.     Defendant has knowledge of such benefits.

82.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and New York Subclass members' purchases of the Product.  Retention of monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Product was suitable for vaginal use and failed to disclose the Product was not suitable for vaginal use, and charged a price premium based on those representations and omissions.

83.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class and New York Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Fraud**
**(On Behalf Of The Class And The New York Subclass)**

84.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

86.     This claim is brought under the laws of the State of New York.

87.     As discussed above, Defendant provided Plaintiff and Class and New York Subclass members with false or misleading material information about the Product, including but not limited to the fact that the Product was suitable for vaginal use, and failing to disclose the Product as not suitable for vaginal use.

88.     These misrepresentations and omissions were made with knowledge of their falsehood.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Product, and had in fact advised that Defendant's Product was unsafe.

89.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and members of the Class and New York Subclass reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Class and Subclass to purchase the Product.

90.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the Class, and the New York Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order awarding Plaintiff, the Class, and the New York Subclass their reasonable attorney's fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

24

Dated: April 25, 2023               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
         Philip L. Fraietta

Philip L. Fraietta
Max S. Roberts
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: pfraietta@bursor.com
      mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
Emily A. Horne*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  bscott@bursor.com
       ehorne@bursor.com

*\*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*