UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHANDRA CAMPBELL, individually
and on behalf of all others similarly situated,

                            Plaintiff,

            -against-                                    Case No. 1:23-cv-03450(JHR)(RWL)

PH-D FEMININE HEALTH LLC,

                            Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

---

SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
*Attorneys for Defendant*
444 Madison Avenue
New York, New York 10022
(212) 743-7000

*Of Counsel*:

        Ethan A. Kobre

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.      Plaintiff Fails to State a Claim Under New York's General Business Law. ................ 4

    II.     Plaintiff Fails to State a Claim for Breach of Express Warranty. ................................ 8

         A.      Plaintiff Has Not Plausibly Alleged That the Product is Not Suitable
                for Vaginal Use ................................................................................................ 8

         B.      Plaintiff's Express Warranty Claim Fails Due to Lack of Privity
                Between the Parties. ......................................................................................... 9

    III.    Plaintiff Fails to State a Claim for Unjust Enrichment. ............................................. 10

    IV.    Plaintiff Fails to State a Claim for Fraud. ................................................................. 12

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
    39 F. Supp. 3d 516 (S.D.N.Y. 2014) ........................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................................3

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) .....................................................................................10

*Chandra Campbell v. Whole Foods Market Group, Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021) .................................................................................1, 13

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) .......................................................................................................4

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) ...................................................................................3, 8

*Davis v. Hain Celestial Grp.*,
    297 F. Supp.3d 327 (E.D.N.Y. 2018) ......................................................................................13

*Eshelby v. L'Oreal USA, Inc.*,
    No. 22 CIV. 1396 (AT), 2023 WL 2647958 (S.D.N.Y. Mar. 27, 2023) ...................................9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    LLC, 783 F.3d 395 (2d Cir. 2015) ...........................................................................................12

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) .......................................................................................................4

*Grossman v. Simply Nourish Pet Food Co.*,
    516 F. Supp. 3d 261 (E.D.N.Y. 2021) .....................................................................................10

*Housey v. Procter & Gamble Co.*,
    No. 21 CIV. 2286 (NRB), 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ...............................7, 9

*Kardovich v. Pfizer, Inc.*,
    97 F. Supp. 3d 131 (E.D.N.Y. 2015) .....................................................................................5, 8

*Koenig v. Boulder Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014)............................................................................9

*Manuel v. Pepsi-Cola Co.*,
763 F. App'x 108 (2d Cir. 2019)....................................................................................8

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)...........................................................................................4

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003)............................................................................5

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993).........................................................................................12

*Mizel Roth IRA on Behalf of Consol. Asset Funding 3 LP v. Unified Cap. Partners 3 LLC*,
2021 WL 1164439 (S.D.N.Y. Mar. 25, 2021) ...............................................................5

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008).........................................................................................11

*Petrosino v. Stearn's Prod., Inc.*,
No. 16 Civ. 7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) .....................4

*Sexually Transmitted Infections Treatment Guidelines, 2021*,
CENTERS FOR DISEASE CONTROL AND PREVENTION,
http://www.cdc.gov/sted/treatment-guidelines/candidiasis.htm ...................................7

*Small v. Lorillard Tobacco Co.*,
252 A.D.2d 1 (N.Y. App. 1998) ...................................................................................14

**Statutes**

N.Y. Gen. Bus. Law § 349................................................................................4, 5, 11

N.Y. Gen. Bus. Law § 349 (ii).................................................................................3

N.Y. Gen. Bus. Law § 349(a)...................................................................................4

N.Y. Gen. Bus. Law § 349(h)...................................................................................4

N.Y. Gen. Bus. Law § 350................................................................................4, 5, 11

N.Y. Gen. Bus. Law § 350, (iii)................................................................................3

New York U.C.C. § 2-313(1)(a) ...............................................................................8

## Other Authorities

62 Fed. Reg 223, 61711 (Nov. 19, 1997)..........................................................................7

Boric Acid, Compound Summary, National Library of Medicine,
   https://pubchem.ncbi.nlm.nih.gov/compound/Boric-Acid ......................................................2

Fed. R. Civ. P. 9(b) ...........................................................................................................6, 12

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 3, 5, 6

*How to Maintain a Healthy Vagina & Vulva*, pH-D Feminine Health,
   https://www.phdfemininehealth.com/blogs/articles/how-to-maintain-a-
   healthy-vagina-vulva; ..................................................................................................2

https://www.cdc.gov/std/treatment-guidelines/candidiasis.htm;
   https://www.cdc.gov/stiapp/candidiasis.html ...........................................................2

*Know About Maintaining Your Vaginal pH Balance*, Healthline (July 11, 2019),
   https://www.healthline.com/health/womens-health/vaginal-ph-
   balance#normal-ph;...................................................................................................6

*Our Story*, pH-D Feminine Health,
   https://www.phdfemininehealth.com/pages/our-story ...........................................2

*Vaginal Boric Acid Rinse*, pH-D Feminine Health,
   https://www.phdfemininehealth.com/collections/boric-acid-instant-vaginal-
   odor-rinse/products/instant-vaginal-odor-rinse........................................................2

Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene
   Products and Personal Lubricants* ...........................................................................6

Withdrawal of Advance Notice of Proposed Rulemaking, 59 Fed. Reg 5226-01
   (Feb. 3, 1994)..........................................................................................................7

Defendant pH-D Feminine Health LLC ("pH-D") submits this Memorandum of Law in Support of its Motion to Dismiss the claims of plaintiff Chandra Campbell ("Plaintiff") under Federal Rules of Civil Procedure Rules 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff appears to be a professional class action litigant. *See, e.g., Chandra Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021).[1] Her Complaint makes allegations that, if accepted, would end the marketing and sale of an entire personal care category: feminine hygiene rinses (sometimes called douches). This is despite the fact that the products she complains about are permitted by the Food and Drug Administration to be marketed and sold to consumers.

Plaintiff's claims here target pH-D's Boric Acid Instant Vaginal Odor Rinse. She asserts that the marketing and sale of the rinse as "suitable for vaginal use" is false and misleading because *some* medical professionals do not recommend the use of douche products generally. But the fact that there is a difference of opinion in the medical community over the use of these products does not make false or misleading pH-D's representation that its product is "suitable for vaginal use." Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

pH-D is a Tennessee-based company specializing in holistic feminine hygiene and wellness solutions. pH-D was created by a woman, for women, to "provide trustworthy health and wellness products to women who struggle with feminine health issues." pH-D, using its founder's biology background and 20 years in the pharmaceutical industry, seeks to develop natural remedies backed

---

[1] In another lawsuit against Whole Foods, a Plaintiff named Chandra Campbell sought redress because she supposedly bought a box of "Honey Graham Crackers" that allegedly did not contain the expected type of flour and was allegedly misleading.

by research for women (like its founder) who are "[u]nsatisfied with expensive, inconvenient and ineffective solutions for vaginal wellness."[2]

One of pH-D's products is a vaginal rinse, which is marketed and sold under the name "Boric Acid Instant Vaginal Odor Rinse" ("Product'). The Product can be used for odor caused by menstruation, intercourse, exercise, or menopause.[3] The Product is regulated as a cosmetic by the Food and Drug Administration ("FDA"), which permits its marketing and sale. The Product has only two ingredients: purified water and boric acid.[4] Boric acid is a natural compound that is found in seawater and has been used for over 100 years by physicians for neutralizing odor.[5] "In its purest form, boric acid is a white powder that is colorless and odorless."[6] Boric acid is a common and safe ingredient used in many cosmetic products and feminine care products to help control vaginal odor.[7] The intra-vaginal use of boric acid is recommended by the Centers for Disease Control to treat certain conditions.[8]

Plaintiff alleges that, in May 2022, she purchased the Product from her local CVS pharmacy. (Doc. 1 at 2, ¶ 8).  Plaintiff alleges that she used the Product and was damaged by the supposedly false and misleading representation on the Product's package that it is "suitable for vaginal use." (*Id.* ¶ 6). Plaintiff believes this statement is false or misleading because *some* individuals in the medical community do not recommend the use of rinses within the vagina. To support her belief, Plaintiff's Complaint includes citations to articles discussing whether women

---

[2] *Our Story*, pH-D Feminine Health, https://www.phdemininehealth.com/pages/our-story
[3] *Vaginal Boric Acid Rinse*, pH-D Feminine Health, https://www.phdemininehealth.com/collections/boric-acid-instant-vaginal-odor-rinse/products/instant-vaginal-odor-rinse
[4] *Id.*
[5]    *How to Maintain a Healthy Vagina & Vulva*, pH-D Feminine Health, https://www.phdemininehealth.com/blogs/articles/how-to-maintain-a-healthy-vagina-vulva; *see also* Boric Acid, Compound Summary, National Library of Medicine, https://pubchem.ncbi.nlm.nih.gov/compound/Boric-Acid
[6] *Id.*
[7] *Id.*
[8] https://www.cdc.gov/std/treatment-guidelines/candidiasis.htm; https://www.cdc.gov/stiapp/candidiasis.html

should rinse the inside of their vagina as a general proposition. Other than a few references to blog posts on pH-D's own website, ***none*** of these articles reference pH-D or, the Product or the use of a boric acid and purified water solution.

Plaintiff insists that as a result of pH-D's supposedly false and misleading statement, she was damaged because she was induced to purchase the Product, which she would not have otherwise bought or would have "paid substantially less for [the Product], had [she] known" the claim was not true. (Doc. 1 at 3, ¶ 9).[9] Plaintiff purports to bring claims against pH-D on behalf of herself and similarly situated purchasers of the Product for (i) violation of New York General Business Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of express warranty, (iv) unjust enrichment, and (v) fraud. (Doc. 1 at 2, ¶ 7). None of these claims has any merit.

## LEGAL STANDARD

A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal of the complaint, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) . While typically, the "Court accepts factual allegations as true, that principle does not apply to legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 574 (S.D.N.Y. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and alterations omitted)). Plausibility requires allegations showing more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. These standards mandate dismissal of Plaintiff's claims here.

---

[9] Plaintiff also alleges that she "experienced irritation as a result of her use of the Product." (Doc. 1 at 3, ¶ 8). She does not, however, make a claim for personal injury in any of the claims that she asserts in the Complaint.

## ARGUMENT

### I.  Plaintiff Fails to State a Claim Under New York's General Business Law.

Plaintiff's first two causes of action, alleging violations of New York General Business Law ("GBL") §§ 349 and 350, fail to state claims. Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service." N.Y. Gen. Bus. Law § 349(a), (h). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). "Deceptive acts" are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce" and is analyzed under the same "reasonable consumer" standard. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). "While GBL § 350 relates specifically to false advertising, the standard for recovery under § 350 . . . is otherwise identical to section 349." *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) (citation and internal quotation marks omitted). Under both provisions, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chufen Chen*, 954 F.3d at 500 (quoting *Fink*, 714 F.3d at 741.)

Plaintiff did not adequately plead that pH-D's acts are materially misleading. The deceptive, materially misleading act Plaintiff alleges pH-D directed at consumers is the statement that its Product is "suitable for vaginal use."  Her GBL § 349 claim contends that she was injured

by pH-D's alleged deception because she "would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product was suitable for vaginal use, and had Defendant not failed to disclose that the Product was not suitable for vaginal use." (Doc. 1 at 19, ¶ 54). As to GBL § 350, Plaintiff maintains she "would not have purchased the Product, or would have paid substantially less for it, had Defendant not misrepresented the Product was suitable for vaginal use, and had Defendant not failed to disclose that the Product was not suitable for vaginal use."  (Doc. 1 at 21, ¶ 67).

But Plaintiff fails to adequately plead that pH-D's statements are materially misleading because she relies only on general opinions about various other feminine hygiene products on the market–not the Product itself. *See* Doc. 1 at 10-11, ¶ ¶ 24-28. In discussing these general opinions, the Plaintiff cites various articles and studies, which this Court may rely on in deciding whether Plaintiff has sufficiently pled her claims.[10]

Where, as here, "a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true." *Mizel Roth IRA on Behalf of Consol. Asset Funding 3 LP v. Unified Cap. Partners 3 LLC*, 2021 WL 1164439, *1 (S.D.N.Y. Mar. 25, 2021). Similarly, when a plaintiff elects to use scientific evidence to state her claims, and that evidence does not support her claims, the plaintiff has not plausibly pleaded her claims. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) ("Plaintiffs have chosen to use scientific studies in an effort to raise plausible inferences that Centrum's claimed health benefits are simply not true. Because the

---

[10] Among the materials a court may consider in deciding a Rule 12(b)(6) motion are: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference," and "(3) documents or information contained in [pH-D]'s motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (citations omitted).

studies cited do not so do, as discussed herein, all of plaintiffs' claims fail to meet the standards under both Rule 12(b)(6) and Rule 9(b).”). This case is no exception.

The articles and studies relied on in the Complaint discuss feminine hygiene and douching products that use an array of different chemical formulations—but none mentions pH-D’s unique boric acid vaginal odor rinse, either by name or by chemical composition.

For example, Footnotes 5 and 9 of Plaintiff’s Complaint cite a 2014 Environmental Health Perspectives article that suggests “more studies are needed” to connect the dots between adverse health effects and the use of *certain* douching and lubricant products that contain parabens, fragrances, and diethyl phthalate, among other chemicals. Wendee Nicole, *A Question for Women’s Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014); Doc. 1 at 7, ¶ 19, 23, fn 5, 9. Notably, aside from the mere hypothesis presented in this article, the author is completely silent about boric acid, products using a boric acid solution, or of pH-D’s Product. *Id.* And, the Product contains none of the chemicals listed in that article.

Likewise, the Healthline article cited in Footnote 8 does not mention boric acid, products using a boric acid solution, or pH-D’s Product. *See* Stephanie Watson, *Everything You Need to Know About Maintaining Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph; Doc. 1 at 7, ¶ 19, fn 8. And the same is true for all the remaining articles cited in the Complaint. Indeed, aside from citations to pH-D’s own website, none of these purported supporting sources expressly mention or even implicitly refers to pH-D, its Product, or feminine hygiene products containing the same or similar boric acid and purified water solution.

At best, Plaintiff has alleged only that *some* theoretical debate exists as to whether *some* feminine hygiene products—but not the Product—*might* cause harm. But the Complaint contains no factual allegations or scientific data that pH-D's Product or its unique boric acid and purified water solution has been considered unsuitable for vaginal use by any faction of the medical community, let alone the consensus of the medical community. On the contrary, medical sources suggest that in some cases, boric acid is recommended for use intra-vaginally to *treat* vaginal irritation. *Sexually Transmitted Infections Treatment Guidelines, 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/sted/treatment-guidelines/candidiasis.htm (listing boric acid as an intra-vaginal treatment for vulvovaginal candidiasis).

Furthermore, the Food and Drug Administration has, in the past, considered comments and testimony related to whether there was a public health effect caused by vaginal douching and, after receiving testimony from members of the medical community, did not make *any change* to the labeling requirements or regulation of this class of products. In essence, the agency that oversees regulation of this class of products found that they could continue to be marketed and sold for vaginal use and that this class of products need not contain cautionary labels. Vaginal Products for Over-the-Counter Human Use; Withdrawal of Advance Notice of Proposed Rulemaking, 59 Fed. Reg 5226-01 (Feb. 3, 1994); Proposed Rules, 62 Fed. Reg 223, 61711 (Nov. 19, 1997).

Plaintiff's failure to allege any link between the Product at issue and any medical opinion about any potential harm by use of the Product (or even similar boric acid formulations) dooms her General Business Law claims. *See Housey v. Procter & Gamble Co.*, No. 21 CIV. 2286 (NRB), 2022 WL 874731, at *4 (S.D.N.Y. Mar. 24, 2022) (granting defendants motion to dismiss where "none of [plaintiff's] articles support[] plaintiff's claim that defendant's product was unsafe); *see also Manuel v. Pepsi-Cola Co.*, 763 F. App'x 108, 109 (2d Cir. 2019) (affirming dismissal of GBL

and consumer fraud claims because "[n]one of the studies [cited in the complaint] purports to establish a causal relationship . . . to a degree that is sufficiently strong."); *Kardovich*, 97 F. Supp. at 141 (dismissing complaint because "plaintiffs have failed to raise a plausible claim that [product]'s representations are false, deceptive, or misleading" because cited scientific studies did not support the plausible inference the product's health benefits were untrue). Those claims should be dismissed.

### II.       Plaintiff Fails to State a Claim for Breach of Express Warranty.

Plaintiff's third cause of action, for breach of an express warranty, fares no better. To state a claim for breach of express warranty, a plaintiff must allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Colpitts*, 527 F. Supp. 3d at 589 (citations omitted and alterations).  Under the New York U.C.C. § 2-313(1)(a), an express warranty is defined as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Plaintiff here has not plausibly alleged a breach of any express warranty.

#### A.   Plaintiff Has Not Plausibly Alleged That the Product is Not Suitable for Vaginal Use

Plaintiff's breach of express warranty fails to plead a material statement that was false or misleading. "To sustain a claim for breach of an express warranty, a plaintiff must point to a specific, express statement that is false or misleading and that a reasonable consumer can interpret as a material claim about the product." *Eshelby v. L'Oreal USA, Inc.*, No. 22 CIV. 1396 (AT), 2023 WL 2647958, at *2 (S.D.N.Y. Mar. 27, 2023).

The material statement Plaintiff alleges pH-D breached is that the product was "suitable for vaginal use." But again, Plaintiff offers nothing to show that the product or its ingredients are not suitable for vaginal use; Plaintiff merely cites articles reflecting a debate on whether women should douche. Those articles often contain only generic allegations about an entire class of products. None of the articles–including the citations to pH-D's website–discuss whether the Product or its specific formulation of boric acid and purified water should be used as a vaginal rinse. *See Housey,* 2022 WL 874731, at *4 ("none of [plaintiff's] articles support[] plaintiff's claim that the charcoal toothpastes are unsafe").  Because Plaintiff did not adequately allege a misleading or false statement, her express warranty claim fails.

**B.  Plaintiff's Express Warranty Claim Fails Due to Lack of Privity Between the Parties.**

Plaintiff's express warranty claim also fails for lack of privity between the parties. Plaintiff states that she purchased the Product "from her local CVS," not from pH-D. (Doc. 1 at 2, ¶ 8). "[P]rivity is an essential element of a cause of action for breach of express warranty."  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)." While there is an exception to the privity requirement if the "plaintiff claims to have been personally injured," the only injury claimed by Plaintiff is purely economic. (Doc. 1 at 22, ¶ 75). And while Plaintiff mentions that she "experienced irritation," (Doc. 1 at 3, ¶ 8), she does not claim personal injury as any element of damage in her Complaint. (Doc. 1 at 22, ¶ 75). Nor did Plaintiff allege how or when she discovered the irritation, nor did she provide details on the extent of the irritation. *See Housey*, 2022 WL 874731, at *8 ("plaintiff's conclusory allegation that the toothpaste was abrading her enamel is insufficient to adequately state a claim of injury" because she did "not explain how or when she discovered the abrasion or provide any details about the nature or extent of the abrasion"). Because

Plaintiff's alleged injury is claimed to be only economic, privity is required; the lack of privity is fatal to her express warranty claim.

### III.     Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff's claim for unjust enrichment should be dismissed because it is duplicative of her other claims. All of Plaintiff's claims turn on the same basic allegation that the Product label is misleading because it states that it is "suitable for vaginal use." To state a claim for unjust enrichment, the Plaintiff must show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscious require restitution." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021) (quoting *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009)). But unjust enrichment is not intended to be blunderbuss catch-all; it is available "'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E. 2d, 1177, 1185 (N.Y. Ct. App. 2012). Unjust enrichment claims must therefore be dismissed where the alleged conduct is duplicative of a plaintiff's other claims arising out of the same facts. *Grossman*, 516 F. Supp. 3d at 284-85 (citing *Hughes v. Ester C Co.*, F. Supp. 3d 862, 877 (E.D.N.Y. 2018) and *Gemini Real Estate Advisors LLC v. La Mack*, No. 14-cv-6498 (LTS)(HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018)) ("[U]njust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed." (citation and alterations omitted)); *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment claim because it was duplicative of plaintiff's other dismissed claims). This is just such a case.

Plaintiff's unjust enrichment claim simply parrots her statutory, contractual, and fraud claims. "Claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Plaintiff's claim for unjust enrichment is based on the assertion that "defendant misrepresented that the Product was suitable for vaginal use and failed to disclose the Product was not suitable for vaginal use, and charged a price premium based on those representations and omissions." (Doc. 1 at 23, ¶ 82). These factual allegations are the same as those on which her GBL § 349 and § 350 claims are based. In those claims, Plaintiff asserts that she was deceived because of pH-D's misrepresentation that "the product was suitable for vaginal use" and its failure to disclose "that the Product was not suitable for vaginal use," and she also asserts that if she had known the truth, she "would not have purchased the Product, or would have paid substantially less for it." (Doc. 1 at 19, ¶ 54-55; 21, ¶ 67-68). Plaintiff's breach of express warranty claim is also based on the same factual allegations: that pH-D asserted that the Product was suitable for vaginal use, when it was not, and that Plaintiff was supposedly "harmed because [she] would not have purchased the Product, or would have paid substantially less for it, if [she] had known that the Product was unsuitable for vaginal use." (Doc. 1 at 22, ¶ 75). These same allegations are parroted in Plaintiff's fraud claim too. (Doc. 1 at 23, ¶ 84-87; 24, ¶ 89-90).

Moreover, Plaintiff's unjust enrichment claim does not allege distinct damages from her other claims. Plaintiff's evidence for her unjust enrichment claim incorporates by reference, and without distinction, the allegations in all preceding paragraphs of the Complaint. (Doc. 1 at 22, ¶ 77). Plaintiff claims restitution as damages for her unjust enrichment claim. (Doc. 1 at 23, ¶ 83). She also seeks "full restitution by refunding monies received" as damages for her breach of express warranty claim. (Doc. 1 at 22, ¶ 76).

The duplicative nature of Plaintiff's unjust enrichment claim illustrates that it is not the type of unusual situation in which a claim of unjust enrichment should be allowed to proceed. The Court should dismiss this claim.

### IV.     Plaintiff Fails to State a Claim for Fraud.

Plaintiff's fifth cause of action (for so-called "fraud") also must be dismissed for failure to state a claim. To state a fraud claim, Plaintiff must allege that pH-D made "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, LLC, 783 F.3d 395, 402 (2d Cir. 2015). And fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires that a plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Courts have summarized this standard as requiring a plaintiff to plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014). Plaintiff failed to do so.

Plaintiff contends that pH-D provided her with "false or misleading information" that its product was "suitable for vaginal use" and that those "misrepresentations . . . were made with the knowledge of their falsehood" and an "intent to induce" Plaintiff to purchase pH-D's Product. (Doc. 1 at 23, ¶ 87; 24, ¶ 89). But Plaintiff has not sufficiently alleged a material misrepresentation or omission of fact, that pH-D knew their representation or omissions to be false and were made with the intent to defraud, or that Plaintiff reasonably relied on any misrepresentation by pH-D.

Plaintiff's central claim is that scientific and medical opinions suggest that douching leads to adverse effects on women's vaginal health. (*See* Doc. 1 at 10-11, ¶ ¶ 24-28). But, as explained above, none of the sources relied on in the Complaint support Plaintiff's claims by referencing, the Product, or the Product's components of boric acid and water. *See* Section I, supra. Because the articles Plaintiff relies on make clear that there is only a debate—rather than any certainty—about the safety of douching *generally*, Plaintiff has not sufficiently pleaded that pH-D made any misrepresentations or omissions of fact. If pH-D's claim that its products are "suitable for vaginal use" are not in fact misrepresentations, then it follows that pH-D did not know them to be false or make them with an intent to deceive.

Indeed, Plaintiff's only allegation about pH-D's intent is indirect and alleges that "[t]hese misrepresentations and omissions were made with knowledge of their falsehood. . . [and t]he misrepresentations and omissions made by pH-D, upon which Plaintiff and members of the Class and New York Subclass reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Class and Subclass to purchase the Product." (Doc. 1 at 23, ¶88; 24, ¶89). But that single allegation–which never really does charge fraudulent intent–is insufficient: "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent . . . ." *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021); *see also Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)). So Plaintiff has failed to sufficiently plead her fraud claim.

Nor can Plaintiff plausibly allege justifiable reliance on any alleged misrepresentations as she had every opportunity to discover facts about pH-D's Product before buying it. "Reliance on defendant's misrepresentations, as required to support fraud claim, will not be presumed where

plaintiff had reasonable opportunity to discover facts about transaction beforehand by using ordinary intelligence, or where a variety of factors could have influenced decision to enter into transaction." *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 8 (N.Y. App. 1998). "Only when defendants effectively controlled all information about the transaction will the existence of misrepresentations give rise to inference of reliance sufficient to allow recovery for fraud, without need for further proof." *Id.*

By citing more than a dozen online articles discussing the propriety of douching as it relates to vaginal health, Plaintiff shows that she had ample resources at her disposal in deciding to purchase and use the Product. Indeed, nowhere in her Complaint does Plaintiff allege otherwise, nor does (or could) she claim that pH-D controlled all the information about the use of feminine hygiene washes and douches. Plaintiff's failure to make a more educated decision about her purchase cannot now be exploited to implicate pH-D in some "fraud" claim.

Because Plaintiff has failed to plead her fraud claim with the required particularity about material misrepresentation/ omission, intent to defraud, or reasonable reliance, her fraud claim must be dismissed.

**CONCLUSION**

Based on the above, pH-D requests that the Court dismiss all claims of the Plaintiff, and for all other relief to which it is entitled.

Respectfully submitted,

  **/s/Ethan A. Kobre**
Ethan A. Kobre
SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
444 Madison Avenue
New York, New York 10022
(212) 743-7000

*Attorneys for Defendant*
*pH-D Feminine Health LLC*

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of June 2023, the foregoing was filed electronically through the ECF system, which will send notice to all counsel of record.


<u>*s/ Ethan A. Kobre*          </u>
Ethan A. Kobre